Doris Johnson Hines (*pro hac vice pending*)
Jeffrey C. Totten (*pro hac vice pending*)
FINNEGAN, HENDERSON, FARABOW,
 GARRETT & DUNNER, LLP
901 New York Avenue, NW
Washington, DC  20001-4413
Telephone:     (202) 408-4000
Facsimile:     (202) 408-4400

Jacob A. Schroeder (SBN 264717)
jacob.schroeder@finnegan.com
FINNEGAN, HENDERSON, FARABOW,
 GARRETT & DUNNER, LLP
3300 Hillview Avenue
Palo Alto, CA  94304-1203
Telephone:     (650) 849-6600
Facsimile:     (650) 849-6666

*Attorneys for Plaintiff*
X One, Inc.

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| X ONE, INC., | CASE NO. |
| Plaintiff, | **COMPLAINT FOR PATENT INFRINGEMENT** |
| v. | |
| UBER TECHNOLOGIES, INC., | **DEMAND FOR JURY TRIAL** |
| Defendant. | |

Plaintiff X One, Inc., through its undersigned attorney, alleges the following for its Complaint against Uber Technologies Inc.:

## NATURE OF ACTION

1.    This is an action for patent infringement under the patent laws of the United States, Title 35, United States Code.

## THE PARTIES

2.    X One, Inc. is a Delaware corporation with its principal place of business in Union City, California.

3.    Upon information and belief, Uber Technologies, Inc. is a Delaware corporation with its principal place of business in San Francisco, California.

## JURISDICTION AND VENUE

4.    This is an action for patent infringement arising under the United States Patent Laws, 35 U.S.C. § 100 et seq.  Subject matter jurisdiction is proper under 28 U.S.C. §§ 1331 and 1338(a).

5.    This Court has personal jurisdiction over Uber.  Uber has conducted and does conduct business within the State of California, and on information and belief, its corporate headquarters are located in this District.  Uber, directly or through subsidiaries or intermediaries, offers for sale, sells, and advertises its services in the United States, the State of California, and the Northern District of California.  These infringing services have been, and continue to be, purchased and used by consumers in the Northern District of California.  Uber has committed acts of patent infringement within the State of California and, more particularly, within the Northern District of California.

6.    Venue is proper in this judicial district under 28 U.S.C. §§ 1391 and 1400(b).

## FACTUAL BACKGROUND

7.    In 2003, X One principal, Mr. Richard Haney, recognized the need for mobile device users to share location information with one another.  At that time, there was no technological solution tied to that particular technology that allowed users to share their locations with one another by updating a map displayed on a user's mobile device.

8.    In 2004, Mr. Haney developed product specifications and developed a working prototype using Nextel telephones.

COMPLAINT FOR PATENT INFRINGEMENT

9.      In April 2005, a patent application naming Mr. Haney as the sole inventor was filed with the United States Patent and Trademark Office.

10.     Since that time, the United States Patent Office has issued more than ten patents to X One, and X One has many more pending patent applications relating to the use of position information in mobile phones.

11.     There are two patents at issue in this action: United States Patent No. 8,798,647 (the '647 Patent) and United States Patent No. 8,798,593 (the '593 Patent) (collectively, the patents-in-suit).

12.     Uber has been aware of X One's portfolio, including the '647 and '593 Patents, since at least December 2014.  In December 2014, X One emailed Uber's CEO, Mr. Travis Kalanick, identified nine of X One's issued patents, including the '647 and '593 Patents, and offered to engage in licensing discussions.

13.     X One alleges that Uber has infringed and continues to infringe one or more claims of the patents-in-suit by engaging in acts that constitute infringement under 35 U.S.C. § 271 et seq., including but not limited to making, using, offering for sale, and/or selling within the United States certain products and services which embody, or in combination embody, one or more claims of the patents-in-suit.  On information and belief, these products and services include, for example, servers configured or adapted to operate with Uber's mobile device applications on iOS, Android, and Microsoft operating systems ("Uber App" ), as well as the Uber ride-sharing, car-pooling, and delivery services (collectively, the "Accused Products and Services"). The Accused Products and Services permit a rider to request a ride from a driver through the Uber App on the rider's mobile device and allow the rider to track the location of Uber's drivers.

## COUNT I: INFRINGEMENT OF U.S. PATENT NO. 8,798,647

14.     X One incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

15.     The '647 Patent is titled "Tracking Proximity of Services Provider to Services Consumer."  The United States Patent and Trademark Office issued this patent on August 5, 2014. A true and correct copy of the patent is attached as Exhibit A.

16.     The claims of the '647 Patent are directed to specific applications of a technological solution tied to the technology of mobile devices that improve on the previously-existing technology. For example, the claims recite specific ways in which a service provider and a service requestor may share and view their respective locations on a map based on GPS data acquired from their mobile devices.

17.     The '647 Patent addresses a technological problem and a technological solution unique to the use of GPS-enabled wireless devices: how to share location information between devices without overtaxing system resources, violating individual privacy concerns, or requiring concurrent voice communication.

18.     Earlier systems and methods did not enable two-way position sharing between mobile devices and were unable to solve this problem.  According to the '647 Patent, at the time of the invention, "[n]o two way position information sharing technology currently exists."  '647 Patent at 1:30-31.

19.     The '647 Patent provides a specific implementation to solve this technological problem and allows users to share position data from their GPS-enabled wireless devices amongst themselves and to plot the users' position data in real-time on an updateable map.  *See, e.g.*, *id.* at 12:20-15:13.

20.     The '647 Patent's specification explains that in some embodiments, location data are not shared outside of a request for services, conserving network resources.  *See, e.g.*, *id.* at 15:26-38; *id.* at 31:55-32:5.

21.     In some embodiments of the '647 Patent, when location data is shared, only users in the group (e.g., the user requesting services and the active service provider(s)) exchange position data.  *See, e.g.*, *id.* at 15:26-38; *id.* at 31:55-32:5.

22.     By limiting the timing of location-data exchange, as well as the users who receive a particular user's location data, some embodiments of the '647 Patent limit the transfer of data across the network and limit potential security concerns from widespread sharing of location data.  *See, e.g.*, *id.* at 2:8-12; *id.* at 8:51-9:65.

23.     The claims of the '647 Patent recite formation of a "use-specific group" of users in connection with a request for services via the launch of an application on a wireless device.  *See, e.g.*, *id.* at 15:26-38; *id.* at 31:55-32:5.

24.     The '647 Patent claims also recite a solution to a technological problem by providing for updateable maps showing the locations of users belonging to a particular group, reducing the need for further voice or text communication and thereby conserving system resources and the amount of data which must be transmitted over a network.  *See, e.g.*, *id.* at 31:49-54.

25.     The '647 Patent also addresses another technological problem unique to the use of GPS-enabled wireless devices: how to dynamically share location information between a service requestor and a service provider.  *See, e.g.*, *id.*at 16:44-17:27.

26.     According to the '647 Patent specification, earlier systems that allowed one-way position information sharing had "no mechanism to add groups and members of groups" and "no mechanism to set up 'instant buddies.'"  *Id.* at 1:62-67.

27.     These earlier systems "are set up at the factory and nothing can be changed in the field by the users and they are always on and cannot be disabled."  *Id.* at 1:67-2:2.

28.     The '647 Patent provides specific implementations for users to dynamically enable "temporary location sharing between phones on an ask and accept basis which automatically expires after a configurable interval terminates."  *Id.* at 1:64-67.

29.     The '647 Patent discloses embodiments that allow "users [to] change things on the fly in the field such as: adding groups and members; adding instant buddies, changing the size of the area in which their buddies can be tracked, enabling or disabling the location information sharing function without disabling the phone, etc."  *Id.* at 3:20-25.

30.     The '647 Patent provides a specific implementation for "businesses to easily identify which service persons are closest to the next job."  *Id.* at 3:26-30.

31.     The '647 Patent describes, for example, forming an instant buddy relationship between a tow truck customer and a tow truck driver wherein "[a]fter both phones are set up as instant buddies, each phone shows the location of the other phone on its moving map."  *Id.* at 15:34-

36. "This allows the tow truck driver to find the user tow truck customer and the user customer to know where the tow truck driver is." *Id.* at 15:36-38.

32. The claims of the '647 Patent recite a specific technological implementation solving a particular technological problem.

33. Claim 22 of the '647 Patent recites sharing location between a requestor and provider of a desired service "in connection with the request for the desired service" with respect to wireless devices. *Id.* at 30:47-31:12.

34. Claim 22 of the '647 Patent recites forming a "use-specific group" between a service provider and a requestor of a desired service based on a request from a requestor "in connection with the request for the desired service" with respect to wireless devices. *Id.* at 30:47-31:12.

35. Claim 22 of the '647 Patent recites an implementation that tracks the location of service providers and provides the requestor of a desired service a map which plots the locations of nearby service providers with respect to wireless devices. *Id.* at 30:47-31:12.

36. Claim 22 of the '647 Patent recites forming a "use-specific group" "in connection with the request for the desired service" and providing a map to the user so the user can track the location of the service provider with respect to wireless devices. *Id.* at 30:47-31:12.

37. X One owns the entire right, title, and interest in and to the '647 Patent.

38. Upon information and belief, Uber has directly infringed one or more claims of the '647 Patent under 35 U.S.C. § 271(a) by, among other things, making, having made, used, offered for sale, sold in the United States products and services used by, or under the direction or control of, Uber in practicing one or more claims of the '647 Patent, including, by way of example and without limitation, the Accused Products and Services.

39. The Accused Products and Services infringe at least Claim 22 of the '647 Patent.

40. Upon information and belief, the Accused Products and Services perform a "method of tracking proximity of position associated with a first wireless device relative to position of a second wireless device, wherein the first wireless device is associated with a requestor of a desired service and the second wireless device is associated with a provider of the desired service." For example, according to Uber documents, the Accused Products and Services allow a first wireless

COMPLAINT FOR PATENT INFRINGEMENT

device (associated with a rider) to track the position of a second wireless device (associated with a driver).



41.     Upon information and belief, the Accused Products and Services perform the claim element of "selecting the provider of the desired service in association with an application launched by the requestor on the first wireless device, wherein the second wireless device is associated with the provider and is thereby selected in associat[ion] with launch of the application."  For example, according to Uber documents, the Accused Products and Services use GPS data associated with a first wireless device (associated with a rider) and a second wireless device (associated with a driver) to select the driver(s) nearest to the rider in response to a rider's request through the Uber application on the first wireless device.

COMPLAINT FOR PATENT INFRINGEMENT



42.     Upon information and belief, the Accused Products and Services perform the claim element of "causing receipt of information on the first wireless device representing position of the provider, dependent on global positioning system (GPS) position data provided by the second wireless device, and receipt of information representing a map associated with the position associated with the first wireless device and the position of the second wireless device."   For example, according to Uber documents, the Accused Products and Services use GPS data from the driver's wireless device to plot the location of the driver on a map displayed on the rider's wireless device.

COMPLAINT FOR PATENT INFRINGEMENT



43.     Upon information and belief, the Accused Products and Services perform the claim element of "causing display of the map on the first wireless device with the position associated with the requestor and the position of the second wireless device rendered thereon."  For example, according to Uber documents, the Accused Products and Services display a map on the rider's wireless device showing the positions of both the rider's wireless device and the driver's wireless device.

COMPLAINT FOR PATENT INFRINGEMENT



44.     Upon information and belief, the Accused Products and Services perform the claim element of "causing receipt of information on the first wireless device representing intermittent positional update dependent on GPS position data provided by the second wireless device, and causing update of display of the map on the first wireless device with respective position associated with the first wireless device and positional update dependent on the GPS position data provided by the second wireless device rendered thereon."  For example, according to Uber documents, the Accused Products and Services update the map displayed on the first wireless device (associated with the rider) to show the updated position of the first wireless device and the second wireless device (associated with the driver) based on GPS data received from the devices, allowing the rider to track the location of the driver on a map on the first wireless device.



45.     According to Uber documents, the position of the rider also appears on the same map.



46.     Upon information and belief, the Accused Products and Services perform the claim element "wherein selecting the provider of the desired service includes forming a use-specific group to have the first wireless device and the second wireless device in connection with the request for the

COMPLAINT FOR PATENT INFRINGEMENT

desired service."  For example, according to Uber's website, the Accused Products and Services

allow for communication between the rider and driver in connection with the ride request using

substitute phone numbers thus creating a ride-specific group including the driver and the rider.



FOR RIDERS  >  A GUIDE TO UBER  >

## Contacting my driver

If you wish to contact your driver to coordinate a pickup location or discuss other details of the ride you requested, tap the bar that displays the driver's info at the bottom of your screen.

Tap CONTACT to choose between calling or messaging your driver. While driving, some drivers may not feel comfortable answering their phones or replying to a text message.

### Substitute phone numbers

In many locations around the world, Uber uses technology that anonymizes phone numbers to keep contact details confidential. So when you and your driver need to contact each other, your personal information stays private.

47.    The Accused Products and Services infringe at least Claim 28 of the '647 Patent.

48.    Upon information and belief, the Accused Products and Services include "[a]n

apparatus comprising instructions stored on non-transitory machine-readable media."

49.    Upon information and belief, the Accused Products and Services include the claim

element of "instructions when executed operable to . . . cause receipt of information on the first

wireless device representing position of the second wireless device and a map associated with

position associated with the first wireless device and the position of the second wireless device."

For example, according to Uber documents, the Accused Products and Services cause a first wireless

device (associated with a rider) to receive information representing the position of a second wireless

device (associated with a driver), the position of the first wireless device, and an associated map.

1
2
3
4
5
6
7
8
9
10
11
12



13      50.      Upon information and belief, the Accused Products and Services include the claim

14  element of "instructions when executed operable to . . . cause display of the map on the first wireless

15  device with the position association with the first wireless device and the position of the second

16  wireless device rendered thereon."  For example, according to Uber documents, the Accused

17  Products and Services cause a first wireless device (associated with a rider) to display a map

18  showing the positions of the first wireless device and a second wireless device (associated with a

19  driver).

20
21
22
23
24
25
26
27
28

COMPLAINT FOR PATENT INFRINGEMENT



51.     Upon information and belief, the Accused Products and Services include the claim element of "instructions when executed operable to . . . cause receipt of information on the first wireless device representing positional update of the second wireless device."  For example, according to Uber documents, the Accused Products and Services cause a first wireless device (associated with a rider) to receive updated information about the position of a second wireless device (associated with a driver), enabling the rider to "track [the driver]'s location on the map."

COMPLAINT FOR PATENT INFRINGEMENT



52.     Upon information and belief, the Accused Products and Services include the claim element of "instructions when executed operable to . . . cause update of display of the map on the first wireless device with the position associated with the first wireless device and updated position of the second wireless device rendered thereon."  For example, based on Uber documents, the Accused Products and Services update the map on a first wireless device (associated with a rider) with the position of the first wireless device and the position of a second wireless device (associated with a driver).



53.     Upon information and belief, the Accused Products and Services include the claim element of "wherein one of the first wireless device and the second wireless device is associated with a provider of a desired service."  For example, the second wireless device is associated with the driver's wireless device.

54.     Upon information and belief, the Accused Products and Services include the claim element of  "wherein the update of the display is to performed to indicate proximity of and direction between the provider of the desired service and a position associated with a requestor of the desired service."  For example, according to Uber documents, the Accused Products and Services enable the rider to "track" the location of the driver on a map showing both the proximity of the driver to the rider and the direction between the driver and the rider.

COMPLAINT FOR PATENT INFRINGEMENT



55.     Upon information and belief, the Accused Products and Services include the claim element of "wherein the causing of the receipt of the information representing the position, the causing of the display, and the causing of the receipt of information representing positional update are invoked responsive to launching an application on the first wireless device in connection with a request by the requestor for the desired service."   For example, based on Uber documents, after the rider launches the Uber application on a first wireless device (associated with a rider), the Uber application receives information representing the location of the rider and the driver, displays the location of the rider and the driver on a map, and updates the map with positional updates for the rider and the driver.

COMPLAINT FOR PATENT INFRINGEMENT



56.     Upon information and belief, the Accused Products and Services include the claim element of "wherein the provider is selected in connection with the request for the desired service." For example, according to Uber documents, the Accused Products and Services select the nearest driver in response to the rider's request for service (e.g., a ride).



57.    Upon information and belief, the Accused Products and Services include the claim element of "wherein the instructions when executed are to cause formation of a use-specific group to have the first wireless device and the second wireless device in connection with the request for the desired service."  For example, according to Uber documents, the Accused Products and Services allow the rider and the driver to communicate by forming a use-specific group consisting of a first wireless device (associated with a rider) and a second wireless device (associated with a driver) in connection with a requested ride.

FOR RIDERS > A GUIDE TO UBER >

## Contacting my driver

If you wish to contact your driver to coordinate a pickup location or discuss other details of the ride you requested, tap the bar that displays the driver's info at the bottom of your screen.

Tap CONTACT to choose between calling or messaging your driver. While driving, some drivers may not feel comfortable answering their phones or replying to a text message.

## Substitute phone numbers

In many locations around the world, Uber uses technology that anonymizes phone numbers to keep contact details confidential. So when you and your driver need to contact each other, your personal information stays private.

COMPLAINT FOR PATENT INFRINGEMENT

58.     Upon information and belief, Uber has actively induced and is actively inducing others (such as Uber drivers and Uber riders) to infringe at least claims 22 and 28 of the '647 Patent under 35 U.S.C. 271(b) through the use of the Accused Products and Services.

59.     Upon information and belief, Uber has contributed to and is contributing to the infringement by others (such as Uber drivers and Uber riders) of at least claim 22 and 28 of the '647 Patent under 35 U.S.C. 271(c) through the use of the Accused Products and Services.

60.     Upon information and belief, Uber has been aware of the '647 Patent since at least December 2014.

61.     Upon information and belief, since becoming aware of the '647 Patent, Uber has provided the Uber App to others (such as Uber drivers and Uber riders) and encouraged, aided, or otherwise caused others to use the Accused Products and Services in the United States in a way that infringes at least claims 22 and 28 of the '647 Patent.

62.     Upon information and belief, the Uber App is specifically intended for use in accessing and using the Accused Products and Services in a way that infringes at least claims 22 and 28 of the '647 Patent, is not a staple article or commodity of commerce, and has no substantial non-infringing uses.

## COUNT II: INFRINGEMENT OF U.S. PATENT NO. 8,798,593

63.     X One incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

64.     The '593 Patent is titled "Location Sharing and Tracking Using Mobile Phones or Other Wireless Devices."  The United States Patent and Trademark Office issued this patent on August 5, 2014.  A true and correct copy of the patent is attached as Exhibit B.

65.     The claims of the '593 Patent are directed to specific applications of a technological solution tied to the technology of mobile devices, which improve on the previously-existing technology.  For example, the claims recite specific ways in which a service provider and a service requestor may share and view their respective locations on a map based on GPS data acquired from their mobile devices.

COMPLAINT FOR PATENT INFRINGEMENT

66.     The '593 Patent addresses a technological problem and a technological solution unique to the use of GPS-enabled wireless devices: how to share location information between devices without overtaxing system resources, violating individual privacy concerns, or requiring concurrent voice communication.

67.     Earlier systems and methods did not enable two-way position sharing between mobile devices and were unable to solve this problem.  According to the '593 Patent, at the time of the invention, "[n]o two way position information sharing technology currently exists."  '593 Patent at 1:30-31.

68.     The '593 Patent provides a specific implementation to solve this technological problem and allows users to share position data from their GPS-enabled wireless devices amongst themselves and to plot the users' position data in real-time on an updateable map.  *See, e.g.*, *id.* at 12:20-15:13.

69.     The '593 Patent's specification explains that, in some embodiments, location data are not shared outside of the buddy list, conserving network resources.  *See, e.g.*, *id.* at 15:26-38; *id.* at 30:49-31:2.

70.     In some embodiments of the '593 Patent, when location data is shared, only users in the buddy list (e.g., the user requesting services and the active service provider(s)) exchange position data.  *See, e.g.*, *id.* at 15:26-38; *id.* at 30:49-31:2.

71.     By limiting the timing of location-data exchange, as well as the users who receive a particular user's location data, some embodiments of the '593 Patent limit the transfer of data across the network and limit potential security concerns from widespread sharing of location data.  *See, e.g.*, *id.* at 2:8-12; *id.* at 8:51-9:65.

72.     The '593 Patent claims recite the formation of a "buddy list" of users so that users may dynamically initiate a location-sharing relationship.  *See, e.g.*, *id.* at 15:26-38; *id.* at 30:49-31:2.

73.     The '593 Patent claims also recite a solution to a technological problem by providing for updateable maps showing the locations of users belonging to a particular buddy list in a manner not requiring concurrent voice communications, reducing the need for further voice or text

COMPLAINT FOR PATENT INFRINGEMENT

communication and thereby conserving system resources and the amount of data which must be transmitted over a network.  *See, e.g.*, *id.* at 30:59-31:2.

74.     The '593 Patent also addresses another technological problem unique to the use of GPS-enabled wireless devices: how to dynamically share location information between a service requestor and a service provider.

75.     Earlier systems that allowed one-way position information sharing had "no mechanism to add groups and members of groups" and "no mechanism to set up 'instant buddies.'" *Id.* at 1:62-67.

76.     These earlier systems "are set up at the factory and nothing can be changed in the field by the users and they are always on and cannot be disabled."  *Id.* at 1:67-2:2.

77.     The '593 Patent provides a specific implementation for users to dynamically enable "temporary location sharing between phones on an ask and accept basis which automatically expires after a configurable interval terminates."  *Id.* at 1:64-67.

78.     The '593 Patent discloses embodiments that allow "users [to] change things on the fly in the field such as: adding groups and members; adding instant buddies, changing the size of the area in which their buddies can be tracked, enabling or disabling the location information sharing function without disabling the phone, etc."  *Id.* at 3:20-25.

79.     The '593 Patent provides specific implementations for "businesses to easily identify which service persons are closest to the next job."  *Id.* at 3:26-30.

80.     The '593 Patent describes forming an instant buddy relationship between a tow truck customer and a tow truck driver wherein "[a]fter both phones are set up as instant buddies, each phone shows the location of the other phone on its moving map."  *Id.* at 15:34-36.  "This allows the tow truck driver to find the user tow truck customer and the user customer to know where the tow truck driver is."  *Id.* at 15:36-38.

81.     The claims of the '593 Patent recite a specific technological implementation solving a particular technological problem.

82.     Claim 19 of the '593 Patent allows an individual to track the location of users on a buddy list and display their location on a map.  *Id.* at 30:49-31:2.

83.     Claim 19 of the '593 Patent allows the user "to change geography represented by the map," thereby changing the size of the area in which their buddies can be tracked. *Id.* at 30:49-31:2.

84.     Claim 19 of the '593 Patent recites an apparatus which "store[s] position information associated with cell phones of plural ones of the multiple users" and "plot[s] the last known location of at least two of the multiple users on the map" with respect to wireless devices. *Id.* at 30:49-31:2.

85.     Claim 19 of the '593 Patent permits an individual to track users on his "buddy list" on a map and "to plot the last known location of at least two of the multiple users on the map" with respect to wireless devices. *Id.* at 30:49-31:2.

86.     X One owns the entire right, title, and interest in and to the '593 Patent.

87.     Upon information and belief, Uber has directly infringed one or more claims of the '593 Patent under 35 U.S.C. § 271(a) by, among other things, making, having made, used, offered for sale, sold in the United States products and services used by, or under the direction or control of, Uber in practicing one or more claims of the '593 Patent, including, by way of example and without limitation, the Accused Products and Services.

88.     The Accused Products and Services infringe at least Claim 19 of the '593 Patent.

89.     Upon information and belief, the Accused Products and Services include the claim element "server."

90.     Upon information and belief, the Accused Products and Services include the claim element "a database representing an account for a first individual, the account having an associated buddy list that identifies multiple users."  For example, according to Uber's website, a rider must have an Uber account before requesting a ride using the Accused Products and Services.

## Creating an Uber account

Creating an Uber account requires a valid email address and phone number. You'll also need to create a password and agree to terms and conditions and our privacy statement.

Fill in your first and last name, phone number, and preferred language. Once you complete this part of the signup process, we send a text SMS to verify your phone number.

Next, enter your payment information. Adding a credit card or debit card number allows your trip fares to be automatically charged after each ride. Please note that we cannot accept prepaid cards.

After you provide this info, we'll send an email to confirm your account registration. Once you confirm, you'll be able to use your app to request a ride.

91.     Upon information and belief, the Accused Products and Services store the Uber account in a database.

92.     Upon information and belief, the Accused Products and Services formulate a list of drivers (e.g., a buddy list) associated with the present location of the rider.  For example, according to Uber documents, when a rider opens the Uber App the rider is shown multiple available drivers near the rider.

COMPLAINT FOR PATENT INFRINGEMENT

1

2

3

4

5

6

7

8

9

10

11

12

13



14        93.    Upon information and belief, the Accused Products and Services include the claim

15   element "software to request and store position information associated with cell phones of plural

16   ones of the multiple users by receiving information from cell phones associated with the respective

17   multiple users in a manner not requiring concurrent voice communications."  For example,

18   according to Uber documents, the Accused Products and Services display a map on a rider's cell

19   phone showing the location of available drivers near the rider's location.  Upon information and

20   belief, the Accused Products and Services generate this map using software that automatically

21   requests and stores GPS position from drivers' cell phones.

22

23

24

25

26

27

28

COMPLAINT FOR PATENT INFRINGEMENT



94.     Upon information and belief, the Accused Products and Services include the claim element "software responsive to a request from the first individual to obtain a map, to obtain a last known position for multiple users identified by the buddy list, to plot the last known location of at least two of the multiple users on the map, to transmit the map with plotted locations to the first individual, and to permit the first individual to change geography represented by the map by zooming the map and to responsively transmit to the first individual a map representing the changed geography with plotted position of at least one of the multiple users, each in a manner not requiring concurrent voice communications."  For example, according to Uber documents, the Accused Products and Services respond to a request from a first individual (a rider) to show a map which indicates the last known location of multiple users (available drivers) near the rider's location.  Upon information and belief, the Accused Products and Services transmit this map with plotted locations to the rider and permit the rider to change the geography represented by the map by zooming the map.  Upon information and belief, once the map is zoomed the Accused Products and Services transmit a new map representing the changed geography to the rider.  Upon information and belief, the Accused Products and Services do not require concurrent voice communications.

COMPLAINT FOR PATENT INFRINGEMENT

1
2
3
4
5
6
7
8
9
10
11
12
13



14      95.     Upon information and belief, Uber has actively induced and actively induces others

15  (such as Uber drivers and Uber riders) to infringe at least claim 19 of the '593 Patent under 35

16  U.S.C. 271(b) through the use of the Accused Products and Services.

17      96.     Upon information and belief, Uber has contributed to and contributes to the

18  infringement by others (such as Uber drivers and Uber riders) of at least claim 19 of the '593 Patent

19  under 35 U.S.C. 271(c) through the use of the Accused Products and Services.

20      97.     Upon information and belief, Uber has been aware of the '593 Patent since at least

21  December 2014.

22      98.     Upon information and belief, since becoming aware of the '593 Patent, Uber has

23  provided the Uber App to others (such as Uber drivers and Uber riders) and encouraged, aided, or

24  otherwise caused others to use the Accused Products and Services in the United States in a way that

25  infringes at least claim 19 of the '593 Patent.

26      99.     Upon information and belief, the Uber App is specifically intended for use in

27  accessing and using the Accused Products and Services in a way that infringes at least claim 19 of

28

1  the '593 Patent, is not a staple article or commodity of commerce, and has no substantial non-

2  infringing uses.

3  ## PRAYER FOR RELIEF

4  WHEREFORE, X One respectfully prays for the following relief:

5  (a) A judgment that Uber is liable for infringing the patents-in-suit;

6  (b) An award of all damages sufficient to fully compensate X One for past infringement, up

7  until entry of the final judgment, by Uber under 35 U.S.C. § 284;

8  (c) Enhancement of damages under 35 U.S.C. § 284;

9  (d) A judgment requiring Uber to pay X One's pre-judgment interest on the damages

10  awarded; and

11  (e) An award of attorney fees under 35 U.S.C. § 285.

12  ## JURY DEMAND

13  X One requests a trial by jury on all issues so triable.

14

15  Dated: October 19, 2016                    FINNEGAN, HENDERSON, FARABOW,
                                              GARRETT & DUNNER, LLP

16

17

18                                            By: /s/ Jacob A. Schroeder
                                                  Doris Johnson Hines (*pro hac vice pending*)
19                                                Jeffrey C. Totten (*pro hac vice pending*)
                                                  FINNEGAN, HENDERSON, FARABOW,
20                                                  GARRETT & DUNNER, LLP
                                                  901 New York Avenue, NW
21                                                Washington, DC  20001-4413
                                                  Telephone:(202) 408-4000
22                                                Facsimile: (202) 408-4400

23                                                Jacob A. Schroeder (SBN 264717)
                                                  jacob.schroeder@finnegan.com
24                                                FINNEGAN, HENDERSON, FARABOW,
                                                    GARRETT & DUNNER, LLP
25                                                3300 Hillview Avenue
                                                  Palo Alto, CA  94304-1203
26                                                Telephone:(650) 849-6600
                                                  Facsimile: (650) 849-6666

27

28                                                Attorneys for Plaintiff
                                                  X One, Inc.

27                                           COMPLAINT FOR PATENT INFRINGEMENT