1  MICHAEL A. JACOBS (CA SBN 111664)
   MJacobs@mofo.com
2  ESTHER KIM CHANG (CA SBN 258024)
   EChang@mofo.com
3  MORRISON & FOERSTER LLP
   425 Market Street
4  San Francisco, California  94105-2482
   Telephone: 415.268.7000
5  Facsimile: 415.268.7522

6  RUDY Y. KIM (CA SBN 199426)
   RudyKim@mofo.com
7  MORRISON & FOERSTER LLP
   755 Page Mill Road
8  Palo Alto, California  94304-1018
   Telephone: 650.813.5600
9  Facsimile: 650.494.0794

10 Attorneys for Defendant
   UBER TECHNOLOGIES, INC.

11

12                UNITED STATES DISTRICT COURT

13               NORTHERN DISTRICT OF CALIFORNIA

14                     SAN JOSE DIVISION

15

16 X ONE, INC.,                        Case No. 5:16-CV-06050-LHK (SVK)

17              Plaintiff,             **UBER'S REPLY IN SUPPORT OF ITS
                                       MOTION FOR SUMMARY
18       v.                            JUDGMENT OF
                                       NON-INFRINGEMENT AND
19 UBER TECHNOLOGIES, INC.,            INVALIDITY UNDER 35 U.S.C. § 101**

20              Defendant.             Hearing:    January 9, 2020
                                       Time:       1:30 pm
21                                     Judge:      Hon. Lucy H. Koh
                                       Ctrm:       8, 4th floor
22
                                       Trial Date: April 13, 2020
23

24

25           **REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

26

27

28

# TABLE OF CONTENTS

Page

I.     INTRODUCTION ................................................................................................. 1

II.    X ONE ESTABLISHES NO DISPUTE OF FACTS PRECLUDING SUMMARY
       JUDGMENT ON THE '647 PATENT ................................................................ 2

       A.     X One's Infringement Theory Fails By X One's Own Admission........................ 2

       B.     X One Cannot Escape Its IPR Statements Distinguishing Konishi Prior Art......... 4

              1.     Prosecution Disclaimer Applies Here Because X One Distinguished
                     Its Claims Over Konishi with an Unambiguous Argument ...................... 4

              2.     It Is Irrelevant That X One Distinguished Konishi Based on Other
                     Factors in Addition to User Input .......................................................... 5

              3.     X One's Reliance on Power Integrations Is Misplaced ............................ 6

       C.     X One Misconstrues Uber's Position on Its User Input Steps ............................... 7

       D.     X One's Argument That Only the Start of the Claimed Method Need Be
              Invoked "Responsive To Launching" Ignores That the First Step of the
              Method Begins at the En Route Screen, Which Its Expert Concedes................... 7

       E.     X One's ▆▆▆▆▆        Theory Raises No Fact Issues, and Fails to Establish
              the Required Responsiveness Between Launch and the En Route View or
              Association Between Launch and Driver Selection................................................ 8

              1.     ▆▆▆▆▆      Does Not Make the Accused En Route View
                     Responsive to Launching," As Required by Claims 1 and 28 .................. 8

              2.     ▆▆▆▆▆        Likewise Fails to Show That the Selection of a Provider
                     Occurs  in Association with Launch," As Required By Claim 22 ............. 9

III.   X ONE ESTABLISHES NO DISPUTE OF FACTS PRECLUDING SUMMARY
       JUDGMENT THAT UBER DOES NOT INFRINGE THE '593 PATENT ................... 10

       A.     X One Concedes That Its Infringement Theory Does Not Describe One
              Consistent "Map" ............................................................................................. 10

       B.     X One's Conclusory Dismissal of Its IPR Statements Regarding Okubo and
              Makoto Fails ................................................................................................... 12

IV.    UBER'S MOTION TO STRIKE X ONE'S INFRINGEMENT CASE ........................... 12

V.     X ONE CANNOT EXPLAIN HOW ITS PATENTS PASS SECTION 101 ................... 13

       A.     X One Concedes That the Claims Do Not Require the Inventive Concepts......... 13

       B.     X One Cannot Answer Uber's Question How X One's Claims Provide an
              Inventive Concept or Describe a Novel Improvement.......................................... 14

       C.     The Court Should Not Entertain X One's Attempt to Revisit Step One............... 14

VI.    CONCLUSION ................................................................................................. 15

UBER'S REPLY ISO SUMMARY JUDGMENT MOTION ON NON-INFRINGEMENT AND SECTION 101 INVALIDITY
Case No. 5:16-CV-06050-LHK
sf-4134956

i

1

<u>**TABLE OF AUTHORITIES**</u>

2

**Page(s)**

3

**Cases**

4

5

*Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*,
    939 F.3d 1355 (Fed. Cir. 2019)...................................................................................13

6

7

*Am. Piledriving Equip., Inc. v. Geoquip, Inc.*,
    637 F.3d 1324 (Fed. Cir. 2011)....................................................................................5

8

*Andersen Corp. v. Fiber Composites, LLC*,
    474 F.3d 1361 (Fed. Cir. 2007)....................................................................................5

9

10

*Aylus Networks, Inc. v. Apple Inc.*,
    856 F.3d 1353 (Fed. Cir. 2017)....................................................................................4

11

*Bridge & Post, Inc. v. Verizon Commc'ns, Inc.*,
    778 F. App'x 882 (Fed. Cir. 2019) ............................................................................15

12

13

14

*Finisar Corp. v. Nistica, Inc.*,
    No. 13-cv-03345-BLF, 2014 U.S. Dist. LEXIS 140532
    (N.D. Cal. Oct. 1, 2014)................................................................................................6

15

*Greenliant Sys., Inc. v. Xicor LLC*,
    692 F.3d 1261 (Fed. Cir. 2012)....................................................................................5

16

17

18

*MLC Intellectual Prop., LLC v. Micron Tech., Inc.*,
    No. 14-cv-03657-SI, 2018 U.S. Dist. LEXIS 165604
    (N.D. Cal. Sept. 26, 2018)............................................................................................6

19

*NCR Corp. v. Documotion Research, Inc.*,
    No. 14-395-GMS, 2015 U.S. Dist. LEXIS 148685 (D. Del. Nov. 3, 2015) ............11

20

21

22

*Oracle Corp. v. Druglogic, Inc.*,
    No. C-11-00910 JCS, 2013 U.S. Dist. LEXIS 164675
    (N.D. Cal. Oct. 16, 2013)..............................................................................................6

23

*Power Integrations, Inc. v. ON Semiconductor Corp.*,
    396 F. Supp. 3d 851 (N.D. Cal. 2019) .....................................................................6, 7

24

25

*Process Control Corp. v. HydReclaim Corp.*,
    190 F.3d 1350 (Fed. Cir. 1999)..................................................................................11

26

*Seachange Int'l, Inc. v. C-COR Inc.*,
    413 F.3d 1361 (Fed. Cir. 2005)....................................................................................4

27

28

*Sensor Elec. Tech., Inc. v. Bolb, Inc.*,
    No. 18-CV-05194-LHK, 2019 U.S. Dist. LEXIS 163654
    (N.D. Cal. Sept. 24, 2019)..........................................................................................11

*Springs Window Fashions LP v. Novo Indus., L.P.*,
    323 F.3d 989 (Fed. Cir. 2003).....................................................................................5

*Straight Path IP Grp., Inc. v. Cisco Sys., Inc.*,
    No. C 16-03463 WHA, 2019 U.S. Dist. LEXIS 202541
    (N.D. Cal. Nov. 20, 2019)............................................................................................5

*Uniloc USA, Inc. v. ADP, LLC*,
    772 F. App'x 890 (Fed. Cir. 2019) ........................................................................14, 15

UBER'S REPLY ISO SUMMARY JUDGMENT MOTION ON NON-INFRINGEMENT AND SECTION 101 INVALIDITY
Case No. 5:16-CV-06050-LHK
sf-4134956

iii

1

## I.    INTRODUCTION

2   X One's opposition raises no factual disputes.  The only issue is whether the undisputed

3  functionality of Uber's accused applications infringes in light of the plain language of the claims,

4  the Court's claim construction, and X One's IPR statements.  Based on this record, X One's

5  infringement arguments fail, and summary judgment of non-infringement should be granted.

6   X One's infringement theory for the '647 patent focuses on the En Route view (step 6

7  below) while its theory for the '593 patent focuses on Uber's Eyeball view (step 1 below).  X One

8  does not dispute the user flow described in Uber's motion, illustrated below.  (Mot. at 3-5.)

9

10

11

12

13

14

15

16



1. Eyeball view    2. Input destination    3. Select one of several product types    4. Place pickup pin and confirm pickup    5. Server finds a match    6. En Route view displayed

17

18   X One's opposition confirms that its infringement theory for the '647 patent—that the

19  claimed operations occur after launch and would not occur without that launch—cannot satisfy

20  the requirements of the "launching" limitations, which require the claimed operations to occur

21  "responsive to" or "in association with" launching.[1]  X One does not dispute that, like the prior art

22  X One distinguished to save its claims in IPR, Uber's applications similarly require additional

23  user input steps after launch in order to perform the claimed operations.  (Mot. at 2-5; Opp. at 3,

24  12.)  X One's reliance on Uber's ▮▮▮▮▮▮ merely applies a technical gloss to X One's theory

25  that the claimed operations need only occur after the application is launched and while it is

26  "running," a claim scope X One opposed and the Court rejected during claim construction.

27

---

[1] "'Launching' limitations" refer to the "responsive to launching" limitation of claims 1 and 28
28  and the "in association with launch" limitation of claim 22.

1    The '593 patent requires that the *same* map be obtained, plotted, and transmitted with

2    plotted locations.  X One's opposition concedes that its infringement theory identifies no such

3    consistent map.  Further, X One cannot dispute that its IPR statements distinguished prior art on

4    the basis of the limitations at issue and on functionality analogous to Uber's system.

5    X One's Section 101 opposition evades the central question:  whether the asserted claims

6    themselves—not the specification and not some supposed benefits of the claimed invention—

7    recite the alleged inventive concepts.  The claims do not.  X One assures the Court that its claims

8    do in fact recite *how* the patents provide their inventive concepts, but X One cannot point to

9    specific claim language that does so.

10   **II.    X ONE ESTABLISHES NO DISPUTE OF FACTS PRECLUDING SUMMARY JUDGMENT ON THE '647 PATENT**

11       X One's '647 patent opposition raises no fact disputes and supports summary judgment.

12       **A.    X One's Infringement Theory Fails By X One's Own Admission**

13   Rather than disputing Uber's characterization of X One's infringement theory, X One

14   doubles down on it and confirms its failure.  Uber's motion attacked X One's theory that a launch

15   need merely "precede" the claimed operations, arguing that this theory failed to satisfy the

16   Court's claim construction order that "place[d] a *temporal* relationship on launching and the other

17   claimed functions:  they [must] happen *in response to* launching."  (Mot. at 6-9.)  X One's

18   opposition characterizes its theory the same way.  (Opp. at 9 ("Uber's motion ignores that every

19   accused Uber ride or food delivery *starts with* an application launch [and an] Uber user[] cannot

20   request services *without first* launching the . . . application) (emphases added).)  X One thus

21   grants what Uber contended:  (1) Uber's launch merely precedes the claimed operations and

22   (2) Uber's claimed operations actually occur "in response to" the "*user* [] request[ing] services."

23   (Mot. at 6-9; Opp. at 9.)

24   The parties agree on more than just how to characterize X One's flawed theory.  The

25   parties also agree that the "launching" limitations require at least a temporal and responsive

26   relationship (claims 1 and 28) or some relationship (claim 22) between launch and the claimed

27

28

1    operations.[2]  (Opp. at 7, 10, 13.)  X One also does not dispute Uber's user flow (Mot. at 3-5), and

2    agrees that a user's request for services (step 4 on page 1) initiates the En Route view.  (Opp. at 3

3    ("*If* the user requests a ride, the Uber system matches the user with a driver, and *causes* display of

4    [the] . . . 'En Route' view") (emphases added).)  But X One has no adequate explanation how this

5    user input step—which triggers both the selection of the driver (claim 22) and display of the En

6    Route view (claims 1 and 28)—provides either of these events with the requisite relationship to

7    the launch of the application mandated by the Court's construction.

8           Confronted with Uber's intervening user input steps after launch, X One cannot and does

9    not dispute that its infringement theory requires that "*everything*" occurring while the application

10   is running is responsive to launch.  (Mot. at 8; Opp. at 12.)  But this theory not only fails to

11   comply with the Court's construction; it directly disobeys it, embracing the exact "in association

12   with the running of the application" construction that this Court rejected.  (Mot. at 8.)[3]

13          X One's only defense for adopting an already rejected claim construction relies on

14   mischaracterizing the Court's order.  X One argues that the Court found that the "launching"

15   limitations did "not [] automatically exclude[]" user input that occurs while the application is

16   "running."  (Opp. at 7-8, 12, 15.)  But X One misses the point:  The Court rejected the proposed

17   "running" construction and although it found that not all user input was necessarily excluded, it

18   did not conclude (as X One must) that *everything* occurring while the application is running

19   satisfies the "launching" limitations.  (Dkt. 73 at 38-40.)

20          Because X One's defense of its infringement case aligns with Uber's attack, and because

21   the Court's construction requires more than X One shows, X One's infringement theory fails.

22
     _____

23   [2] X One has no response to Uber's invocations of X One's Federal Circuit briefing.  (Mot. at 10,
     13, 18.)  Further, in the '647 IPR appeal, X One argued that "a mere 'launch first, responsive

24   actions later' sequence" was insufficient for "responsive to launching" and that the "temporal
     relationship" required "the claimed functions [to] 'happen in response to launching,' not simply

25   *after* launching."  (Dkt. 302-2 at A1184 (emphasis in original).)  X One argued similarly that the
     "in association with launch" limitation "still require[d] a relationship between launching the

26   application on the wireless device and the claimed functions, not merely that the application was
     launched at some point *before* the claimed functions."  (*Id.* at A1178 (emphasis added).)

27   [3] Contrary to its position here, X One argued in the '647 IPR appeal that "'[r]esponsive to
     launch[ing] cannot be running'—otherwise, 'those words get read out of the claim,' and 'the

28   claim term means nothing.'"  (Dkt. 302-2 at A1180-A1181.)

### B. X One Cannot Escape Its IPR Statements Distinguishing Konishi Prior Art

X One cannot explain its '647 IPR statements distinguishing Konishi, which X One argued did not satisfy the "launching" limitations because it required user input to invoke the claimed operations.[4]  (Mot. at 9-13.)  As Uber demonstrated and X One does not dispute, Uber's applications likewise require several user input steps (steps 2-4 on page 1).  (*Id.* at 3-5; Opp. at 3, 11.)  X One cannot reclaim for infringement the same Konishi functionality that it disclaimed during IPR.  Prosecution disclaimer applies to IPR proceedings to "ensure that claims are not argued one way in order to maintain their patentability and in a different way against accused infringers."  *Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1360 (Fed. Cir. 2017)).  And even if prosecution disclaimer does not apply, X One does not dispute that the Court may still use X One's IPR statements to further construe the plain meaning.  (Mot. at 14.)

#### 1. Prosecution Disclaimer Applies Here Because X One Distinguished Its Claims Over Konishi with an Unambiguous Argument

X One does not dispute that prosecution disclaimer can apply to IPR proceedings.  (Mot. at 13; Opp. at 14-15.)  X One's consistent and unambiguous statements in IPR to overcome Konishi qualify as prosecution disclaimer.  "Where an applicant argues that a claim possesses a feature that the prior art does not possess in order to overcome [that] prior art . . . , the argument may serve to narrow the scope of otherwise broad claim language."  *Seachange Int'l, Inc. v. C-COR Inc.*, 413 F.3d 1361, 1372-73 (Fed. Cir. 2005); *see also Aylus Networks*, 856 F.3d at 1364 (patentee's narrowing IPR statements over prior art qualified as prosecution disclaimer).

In the '647 IPR, the PTAB accepted X One's arguments why Konishi did not practice the "launching" limitations and upheld claim validity.  The PTAB accepted X One's plain meaning construction and rejected Uber's "in association with running" construction, but disagreed with X One that the ordinary meaning of the "launching" limitations excluded "*all* user input" and

---

[4] Contrary to X One's argument, Uber did not "selectively quote[] X One's IPR statements." (Opp. at 14.)  Uber provided dozens of lengthy in-context examples of X One's IPR arguments (Dkt. 299-7) and attached the entire relevant IPR record.  Moreover, X One continues to distinguish Konishi on this basis in the Federal Circuit, arguing that "[i]n Konishi, sending location information [] is not 'responsive to launching []' or 'in association with an application launched[.]'  Instead, [the claimed operations] occur after user input at step 35 and would not occur without that input."  (Dkt. 302-2 at A1192.)

UBER'S REPLY ISO SUMMARY JUDGMENT MOTION ON NON-INFRINGEMENT AND SECTION 101 INVALIDITY
Case No. 5:16-CV-06050-LHK
sf-4134956

4

1  found that the broadest reasonable interpretation allowed for some user input.  (Opp. at 8, 15;

2  Dkt. 302-2 at A900.)

3  Regardless, prosecution disclaimer applies even if the "the examiner explicitly disagreed

4  with" the patentee's argument (which it did not here).  *Am. Piledriving Equip., Inc. v. Geoquip,*

5  *Inc.*, 637 F.3d 1324, 1336 (Fed. Cir. 2011) (court adopting narrow construction based on

6  patentee's narrowing (but unsuccessful) statements during reexamination to overcome prior art);

7  *see also Greenliant Sys., Inc. v. Xicor LLC*, 692 F.3d 1261, 1271 (Fed. Cir. 2012) ("It does not

8  matter whether the examiner or the Board adopted a certain argument for allowance; the sole

9  question is whether the argument was made."); *Springs Window Fashions LP v. Novo Indus.,*

10 *L.P.*, 323 F.3d 989, 995 (Fed. Cir. 2003) ("the examiner's remarks do not negate the effect of the

11 applicant's disclaimer . . . . [Under] the broadest reasonable interpretation, it is not surprising that

12 an examiner would not be satisfied . . . , but that a court would later hold the patentee to the

13 distinction he pressed during prosecution." (citation omitted)).

14 X One articulates no infringement argument that survives prosecution disclaimer in view

15 of Konishi.  The Court should hold X One to its distinguishing statements and should not

16 countenance "shifting sands of the patent owner's delineations of the claimed invention's

17 scope — . . . narrowing of scope to avoid invalidity before the Federal Circuit, followed by its

18 broadening of scope to accuse others of infringement in the district court."  *Straight Path IP Grp.,*

19 *Inc. v. Cisco Sys., Inc.*, No. C 16-03463 WHA, 2019 U.S. Dist. LEXIS 202541, at *2, *11 (N.D.

20 Cal. Nov. 20, 2019) (finding case exceptional on basis of patentee's "duplicitous machinations in

21 telling the Federal Circuit one thing and telling this Court the opposite on a critical point").

22 **2.  It Is Irrelevant That X One Distinguished Konishi Based on Other**
   **Factors in Addition to User Input**

23 X One's argument that it distinguished Konishi on additional grounds—such as Konishi

24 not disclosing an "application"—does not negate its disclaimer.  "[A]s we have made clear, an

25 applicant's argument that a prior art reference is distinguishable on a particular ground can serve

26 as a disclaimer of claim scope even if the applicant distinguishes the reference on other grounds

27 as well."  *Andersen Corp. v. Fiber Composites, LLC*, 474 F.3d 1361, 1374 (Fed. Cir. 2007);

28

*Finisar Corp. v. Nistica, Inc.*, No. 13-cv-03345-BLF, 2014 U.S. Dist. LEXIS 140532, at *24-25 (N.D. Cal. Oct. 1, 2014) (finding disavowal of claim scope even where examiner did not rely on statement and allowed claims based on different distinction).

### 3.   X One's Reliance on *Power Integrations* Is Misplaced

X One's reliance on *Power Integrations, Inc. v. ON Semiconductor Corp.*, 396 F. Supp. 3d 851, 864 (N.D. Cal. 2019), to argue that disclaimer should not apply is misplaced.  X One ignores that case's "somewhat unique procedural posture," *id.* at 864, not present here, and mischaracterizes the PTAB's '647 IPR decision.  (Opp. at 15.)

***X One Disclaimed After Claim Construction***.  The *Power Integrations* court held that prosecution disclaimer did not apply "[f]irst[] and most importantly" because the patentee had made its disclaiming IPR statements before the court's claim construction.  396 F. Supp. 3d at 863.  The defendant could have argued disclaimer during claim construction, but did not.  *Id.*  Here, X One disclaimed claim scope *after* claim construction, so Uber could not have raised it there.  "[I]t is well-established that a trial court may engage in additional claim construction or modify a previous construction after the *Markman* hearing . . . ."  *Oracle Corp. v. Druglogic, Inc.*, No. C-11-00910 JCS, 2013 U.S. Dist. LEXIS 164675, at *75-76 (N.D. Cal. Oct. 16, 2013); *see also MLC Intellectual Prop., LLC v. Micron Tech., Inc.*, No. 14-cv-03657-SI, 2018 U.S. Dist. LEXIS 165604, at *23-27 (N.D. Cal. Sept. 26, 2018) (performing supplemental claim construction to incorporate *ex parte* reexamination record occurring after initial construction).

***PTAB allowed the '647 claims***.  The *Power Integrations* court also declined to find disclaimer because the PTAB had invalidated the claims.  It noted that the "test [for prosecution disclaimer] (and the rationales underlying it) [was] meant to hold patentees to the arguments they make to secure allowed claims, not rejected claims."  *Power Integrations*, 396 F. Supp. 3d at 865. The court was concerned that the accused infringer would argue at trial that the claims were invalid per the PTAB ruling, but also hold the patentee to its narrowing statements.  *Id.*  That rationale does not apply here, where the PTAB *allowed* the '647 claims because it *accepted* X One's construction, rejecting Uber's "in association with running" construction, and finding the

1    "launching" limitations distinguishable.[5]

2         ***'647 IPR was not vacated***.  Finally, the *Power Integrations* "case [was] unique for the

3    additional reason that the PTAB's decision was vacated and remanded for dismissal because the

4    IPR was time-barred."  396 F. Supp. 3d at 866.  That rationale does not apply here.

5         **C.    X One Misconstrues Uber's Position on Its User Input Steps**

6         X One mischaracterizes Uber's '647 patent argument regarding user input.  (Opp. at 12-

7    13.)  Uber acknowledged that the Court did not necessarily preclude all user input.  (Mot. at 8 n.6

8    (non-infringement due to "lack of any temporal and responsive relationship" rather than "user

9    input *per se*").)  Rather, Uber points to specific user input steps:  the user's request for services,

10   not the launch, triggers the selection of the provider and display of the En Route screen.  (*See*

11   steps 2-4 on page 1; Mot. at 7, 9; Opp. at 3.)  These same user input steps also confirm X One's

12   prosecution disclaimer.  X One cannot credibly distinguish the user input required by Uber's user

13   flow to reach the accused En Route view from the user input it disclaimed for Konishi.  (Mot. at

14   13-14.)  Uber requires the user to select the vehicle mode (e.g., UberX, Pool) before a ride can be

15   requested, which is identical to the vehicle mode selection disclaimed in Konishi.  (*Id.* at 10-13;

16   Dkt. 298-5, Meldal Dep. 160:4-9 (testifying that Uber user must select vehicle mode before

17   progressing).)  X One does not argue that the two user input flows are distinguishable, and instead

18   argues only that the user flow context is different.  (Opp. at 8, 13.)

19   **D.    X One's Argument That Only the Start of the Claimed Method Need Be
         Invoked "Responsive To Launching" Ignores That the First Step of the
20       Method Begins at the En Route Screen, Which Its Expert Concedes**

21        Uber objects to X One's argument that "the method [need only be] started by the launch,

22   not that each individual step is triggered by a launch."[6]  (Opp. at 11.)  This theory should be

23   stricken because X One's infringement contentions do not disclose it.  (*See* Dkt. 249-4 at 7-11.)

24

25   [5] The PTAB held that Konishi "fail[ed] to provide the necessary connection between Konishi's
     application startup and method invocation" and for that reason allowed claims 1 and 28 over
     Konishi.  (Dkt. 302-2 at A908-A909 ("responsive to launching").)  Similarly, it held that the
26   claims "associate[d] the required actions with the application launch as opposed to associating
     with just the *running* of an application" and for that reason allowed claim 22 over Konishi.  (*Id.* at
27   A910 ("in association with launch") (emphasis added).)

28   [6] X One makes this argument only for '647 claims 1 and 28, not claim 22.  (Opp. at 11.)

1    Regardless, this argument fails.  X One's expert Dr. Meldal repeatedly testified that the

2    claimed operations that are purportedly responsive to or in association with launching *begin* at the

3    En Route screen.  He testified that "[t]he [En Route] screen in Exhibit 30 is, among the screens

4    we've looked at so far, the [] *first of these* that is required by the method invoked in response to

5    the app launch."  (E.g. Dkt. 298-5, Meldal Dep. 177:22-179:10 (ride-share) (emphasis added); *see

6    also id.* at 256:12-14 (Eats).)  He admitted that the "intervening steps [between launch and the En

7    route screen] are not claimed steps of the method."  (*Id.* at 162:19-22.)  X One's cited testimony

8    is inapposite, as Dr. Meldal testified merely that "there are steps leading up to the *first of the

9    required steps*."  (Opp. at 11 (emphasis added).)  X One's opposition itself states that Uber's

10   "En Route view [] practices the claimed method steps."  (*Id.* at 12.)

11        **E.       X One's ▮▮▮▮▮ Theory Raises No Fact Issues, and Fails to Establish the
                    Required Responsiveness Between Launch and the En Route View or**
12   **Association Between Launch and Driver Selection**

13        Uber objects that X One's infringement contentions did not disclose this new ▮▮▮▮▮

14   theory.  Its prominence in X One's opposition amplifies Uber's prejudice and confirms that it

15   should be stricken.  (*See* Dkt. 249-4 at 7-11.)  But even if it is considered, the ▮▮▮▮▮ theory

16   does not bolster X One's infringement case.  ▮▮▮▮▮ sole contribution is to lend a technical

17   patina to X One's misguided infringement theory based on the rejected "running" construction of

18   the claims.  With or without ▮▮▮▮▮, X One's infringement theory is merely that the En Route

19   view and driver selection "start[] with an application launch" and would not occur "without first

20   launching" the application.  (*See supra* Section II.A.)

21        **1.       ▮▮▮▮▮ Does Not Make the Accused En Route View "Responsive to
                    Launching," As Required by Claims 1 and 28**
22        X One's reliance on ▮▮▮▮▮ adds nothing because it is an identifier for activities

23   occurring after launch while the application is running.  (*See, e.g.*, Opp. at 11 ("The ▮▮▮▮▮

24   identifies a series of events, including the claim method steps.").  The ▮▮▮▮▮

25   ▮▮▮▮▮ until the session ends."  (Dkt. 260-8 ("Meldal Rpt.")

26   ¶ 348 (emphasis added).)  Using a ▮▮▮▮▮ to track all events that occur while the application is

27   running does not create the required temporal and responsive relationship between launch and the

28

1   accused En Route view.

2   X One admits that the creation of a ███████ will not always result in a ride request or

3   the subsequent En Route view. (Dkt. 298-5, Meldal Dep. 202:22-203:18.)  Dr. Meldal asserts

4   only that "[t]he ███████ creation is part of the process that ultimately *may* yield in the request

5   for a ride" and that "*without* the creation of a ███████ there will be no request for a ride." (*Id.*

6   at 202:12-20 (emphasis added).) ███████ thus ends where X One's flawed infringement theory

7   began:  the En Route view may occur after launch and would not occur without that launch.  That

8   does not make it "responsive."

9   Likewise, X One's attempt to forge a temporal connection by arguing that █████████

10  ███████████████████████████████████████████████████████████████████████████████████ " is

11  unavailing.  (Opp. at 4, 10-12.)  X One does not claim that the En Route view must occur within

12  ███████ after launch, nor that it automatically occurs ███████ after launch, nor that the

13  session ending forces a close of the application if the user does not arrive at the En Route view

14  within ███████.  (*See id.* at 11-12; Meldal Rpt. ¶¶ 348-354; Dkt. 322-4, Meldal Dep. 190:7-

15  204:24.)  Because the session ends only when the entire trip completes or the application█

16  ███████████████████ (Opp. at 4), a user can launch the Uber application and interact with

17  it indefinitely using the same ███████ without the session ending, and without ever invoking

18  the En Route view.  (Meldal Rpt. ¶¶ 348-349 ("████████████████████████████████████████

19  ███████████████ *until the session ends*" (emphasis added)); Dkt. 322-4, Meldal Dep. 203:19-

20  204:9 (███████ could last "four hours"); *id.* at 153:20-154:1 ("[I]f a user does not get to . . . the

21  en route view, then the method is not practiced.")

22  X One fails to explain how ███████ changes X One's theory that everything occurring

23  while the application is running is "responsive to launching," and fails to demonstrate how the

24  ███████ creates the required temporal and responsive relationship.

25          2.          ███████ **Likewise Fails to Show That the Selection of a Provider**
                        **Occurs "in Association with Launch," As Required By Claim 22**

26  For the same reasons, X One's ███████ theory fails to show that a provider is selected

27  "in association with launch."  As X One acknowledges, the same user request for a ride that

28

1   displays the En Route view also matches the user with a driver.  (Mot. at 4; Opp. at 3.)  And like

2   the En Route view display, the selection of the provider (i.e., driver) is not caused by the creation

3   of a ███████████ (Dkt. 298-5, Meldal Dep. 202:22-203:18.)  X One merely argues that "the

4   ███████ *identifies* a series of events, including the pairing of a driver with the rider, from the

5   launch to the end of the trip."  (Opp. at 13 (emphasis added).)  X One fails to explain how the

6   ███████ which identifies activity while the application is running, makes selection of the

7   provider "in association with the launch" of the application.  If it does, then *anything* occurring on

8   the application after it is launched would be "associated with" the launch, which is indeed

9   X One's ultimate flawed theory.  (*See supra* Section II.A.)

10  **III.    X ONE ESTABLISHES NO DISPUTE OF FACTS PRECLUDING SUMMARY
         JUDGMENT THAT UBER DOES NOT INFRINGE THE '593 PATENT**

11          X One's '593 patent opposition also raises no factual disputes.  X One's opposition relies

12  on new "map-matching" and a "driver locations are a map" theories, neither of which was

13  disclosed in X One's infringement contentions.  (*See* Dkt. 249-4 at 11-17.)  Like X One's

14  '647 patent ███████ argument, X One's reliance on these undisclosed theories in its opposition

15  demonstrates the prejudice Uber faces.  Regardless, X One's new theories fail.

16          **A.    X One Concedes That Its Infringement Theory Does Not Describe One
               Consistent "Map"**

17

18          Uber's motion demonstrated that the same map must be:  (1) obtained; (2) plotted with

19  locations; and (3) transmitted with plotted locations.[7]  (Mot. at 15.)  X One's opposition concedes

20  that its infringement theory identifies a different map for plotting than transmitting, and thereby

21  fails.  For plotting, X One argues that "Uber's map-matching process places driver locations on

22  particular road segments *on the* ███████ *map*" and "plots the driver locations *onto a map of*

23  ███████ *road segments*."  (Opp. at 16-17; *id.* at 18 (emphases added).)  X One never claims that

24  this ███████ map or these ███████ road segments are transmitted.  Rather, X One argues that

25  "[w]hen it *sends those map-matched locations* to the Uber Rider application, an Uber server is

26

27  _____
    [7] X One's Motion for Summary Judgment on Validity presents the same antecedent basis reading
    that Uber relies on here: X One argues that "Claim 19 requires that the server plots the location of
28  at least two other users on a map *that* is sent to the first user."  (Dkt. 294 at 12 (emphasis added).)

1  transmitting the 'map with plotted locations'" and that "[i]n *sending a map of fitted locations*,

2  Uber transmits the map 'with plotted locations.'" (*Id.* at 17.)  X One does not dispute that its

3  infringement theory thus creates at least two different "maps" for plotting and transmitting:

4  (1) the ▮▮▮▮▮ map and (2) the map-matched or fitted locations.  Summary judgment on the

5  '593 patent should be granted for Uber on this basis alone.

6       Unable to identify one consistent map, X One instead argues—contrary to the plain

7  language of the claim—that the three "maps" not only do not have to be identical, but cannot be

8  identical due to technical reasons.  (*Id.*)  X One cites no authority that supposed technical

9  problems with claim language weigh against applying antecedent basis claim construction

10 principles.  X One's argument that the maps in the claim must allow for some differences because

11 otherwise, "the plotted locations would not appear on the map" also ignores that the limitation "to

12 transmit the *map* with *plotted locations*" includes two distinct concepts:  the map and locations.

13 (*Id.*)  The claim language requires that the map itself, apart from whether locations are plotted on

14 it, be the same map that is obtained, plotted with locations, and transmitted with plotted locations.

15 If X One is arguing that properly read, the claim is inoperable, then that is another basis for

16 summary judgment.  *Process Control Corp. v. HydReclaim Corp.*, 190 F.3d 1350, 1359 (Fed. Cir.

17 1999) (vacating finding of infringement because claims were invalid as inoperable).

18       X One's fallback argument that the transmitted "map is *based on and reflects* the [plotted]

19 map of road segments" and that the two maps are thus "intertwined," (Opp. at 16-17 (emphasis

20 added)), fails to satisfy antecedent basis claim construction principles.  "The Federal Circuit has

21 held that claim terms '[b]ased on [an] antecedent basis relationship . . . carry the *same* meaning

22 throughout the claims.'"  *Sensor Elec. Tech., Inc. v. Bolb, Inc.*, No. 18-CV-05194-LHK, 2019

23 U.S. Dist. LEXIS 163654, at *47 (N.D. Cal. Sept. 24, 2019) (emphasis added and citation

24 omitted); *see also NCR Corp. v. Documotion Research, Inc.*, No. 14-395-GMS, 2015 U.S. Dist.

25 LEXIS 148685, at *5 n.22 (D. Del. Nov. 3, 2015) ("[T]he printing press or coater referred to in

26 the second instance *must be the same* as the first printing press or coater" (emphasis added)).  It is

27 thus not enough, as X One urges, for the transmitted "map" (driver locations previously adjusted

28 using ▮▮▮▮▮ data) to contain elements affected by the "map" onto which those locations were

1    "plotted" (     data); they must be the same map. X One cites no authority for its argument

2    that the maps need only "correspond[]" with one another. (Opp. at 16-17.)

3    **B.    X One's Conclusory Dismissal of Its IPR Statements Regarding Okubo and
     Makoto Fails**

4    X One's IPR arguments, which distinguished prior art transmitting locations alone

5    because it did not satisfy "transmit[ting] the map with plotted locations," also doom its

6    infringement case. (Mot. at 17-19.) X One does not dispute that it made these distinguishing

7    statements, nor that prosecution disclaimer applies, but contends that it distinguished Okubo and

8    Makoto on other grounds. (Opp. at 18.) That does not moot the disclaimer effect of the

9    statements Uber cited. (*See supra* Section II.B.2.)

10   X One also relies on the distinction that unlike Uber, the IPR prior art transmitted only

11   "raw" and "unprocessed" GPS coordinates (Opp. at 18), but this assertion is contradicted by the

12   record. Okubo did in fact transmit *corrected* GPS coordinates rather than raw GPS data, which

13   X One itself identified to show why Okubo would not be modified to *additionally* transmit maps:

14   > [T]he only data connection in Okubo's system is the DGPS connection . . . . [DGPS]
     > systems broadcast local *GPS corrections* information, allowing a user's GPS receiver to
15   > more accurately determine its location. . . . Significant portions of Okubo's limited
     > bandwidth would be utilized on *DGPS corrections* and group members' zones and
16   > location coordinates. Petitioner's proposed combination—sending entire maps that
     > contain plotted positions—using Okubo's system would not have been feasible to an
17   > ordinary artisan in 2005.

18   (Dkt. 302-3 at B314-B316 (emphasis added and citations omitted).)

19   Again, X One holds Uber to a different standard than the prior art. For the Okubo prior

20   art, corrected locations transmitted to be rendered on a map on a mobile device are simply

21   location coordinates. But for Uber, this similar transmission is a "map with plotted locations."

22   These constantly shifting goalposts mandate summary judgment for Uber.

23   **IV.    UBER'S MOTION TO STRIKE X ONE'S INFRINGEMENT CASE**

24   X One's opposition does not respond to Uber's argument that its motion to strike portions

25   of Dr. Meldal's report (Dkt. 249-4) forms another basis for granting summary judgment (Mot. at

26   20). Uber again objects to the undisclosed infringement theories in X One's opposition, which

27   highlights the central role that these new theories play in X One's infringement case. These

28

1   theories include:  the "▮▮▮▮▮▮ theory ('647 patent); argument that the launch need only

2   invoke the steps *leading to* the claimed steps ('647 patent); "map-matching" process plots

3   locations on a map ('593 patent); and Uber's transmission of fitted location coordinates (as a

4   result of map-matching) qualifies as "transmit[ting] the map with plotted locations."  (Dkt. 249-4

5   at 7-17.)  X One agrees that new "last-minute" theories that can be "found nowhere in []

6   contentions" should not be permitted on summary judgment.  (Opp. at 19, 22.)

7   **V.      X ONE CANNOT EXPLAIN HOW ITS PATENTS PASS SECTION 101**

8           X One's opposition confirms that its claims do not require the inventive concepts that the

9   Court found in its Section 101 order.  And X One remains unable to identify any specific claim

10  language providing the "how" rather than the "what" of its alleged inventive concepts.

11          **A.      X One Concedes That the Claims Do Not Require the Inventive Concepts**

12          X One's opposition confirms its position that dynamic formation and two-way location

13  sharing may be present or absent depending on whether X One is arguing Section 101 or

14  infringement.  These inventive concepts are thus not claimed.  "We have repeatedly held that

15  features that are not claimed are irrelevant as to step 1 or step 2 of the *Mayo/Alice* analysis."  *Am.*

16  *Axle & Mfg., Inc. v. Neapco Holdings LLC*, 939 F.3d 1355, 1363-64 (Fed. Cir. 2019).

17          ***Dynamic formation***.  While X One argues it has not "renounced" dynamic formation, it

18  never contends that this alleged inventive concept is required.  X One admits that dynamic

19  formation "was not intoned" by X One's technical expert in his infringement analysis, but argues

20  that his opinions imply an analysis of dynamic formation.  (Opp. at 20.)  Not so.  To the contrary,

21  Dr. Meldal testified that dynamic formation was *not* part of his analysis and *not* required by the

22  use-specific group limitation.  (Dkt. 298-5, Meldal Dep. 237:14-19.)  His analysis of "use-specific

23  group" begins with the group-forming result rather than the process of forming the group:  "Once

24  a driver and rider are matched, . . . ."  (Meldal Rpt. ¶¶ 363, 443, 556.)  Whether Dr. Meldal's

25  analysis implicitly discussed "dynamic" elements, X One's continued refusal to claim dynamic

26  formation for either patent makes the concept irrelevant to the Section 101 inquiry.

27          ***Two-way location sharing***.  X One's express argument that the "claims *allow* for this

28  two-way sharing feature [but] do not *require* it" confirms the claims' unpatentability.  (Opp. at 21

1   (emphases added).)  Claim 19 of the '593 patent, by X One's own admission, does not require

2   two-way location sharing.  (*Id.*)  Regarding the '647 patent, X One does not dispute that the Court

3   found the "interchangeability" between the first and second wireless devices to produce two-way

4   location sharing.  (Mot. at 23.)  Yet X One states that claim 22's wireless devices are not

5   interchangeable.  (Opp. at 21.)  This eliminates the Court's basis for finding two-way location

6   sharing in claim 22.  X One's opposition confirms that its claims (other than claim 23) do not

7   require two-way location sharing, and those claims should no longer be found to contain this

8   alleged inventive concept.

9           **B.      X One Cannot Answer Uber's Question *How* X One's Claims Provide an
                     Inventive Concept or Describe a Novel Improvement**

10          X One's opposition demonstrates that it cannot show what part of the claims recite

11  anything more than the "what" and explain the "how."  X One accuses Uber of "omit[ting]

12  technical specifics" in the claims, but never explains what "technical specifics" Uber disregarded;

13  because there are none.  (Opp. at 22.)  X One repeatedly states in conclusory fashion that its

14  claims, for example, "describe how the claimed elements implement the inventive concepts," (*id.*

15  at 23), but cites no particular claim language that does so.  (*Id.* at 19-25.)

16          Contrary to X One's argument, this is not a "wholly new theory of unpatentability."  (*Id.*

17  at 19, 22.)  Uber made this very argument in its motion to dismiss, which X One agrees was

18  incorporated by reference in Uber's invalidity contentions.  (Opp. at 7; Dkt. 252-3 at 15-16.)  In

19  its motion to dismiss, Uber argued that the claims "fail[ed] to recite the technical details" and that

20  "[t]he claims [did] not recite any particular algorithm or programming for accomplishing these

21  functions."  (Dkt. 24 at 13.)

22          **C.      The Court Should Not Entertain X One's Attempt to Revisit Step One**

23          X One's patents were already held to be directed toward an abstract idea.  (Dkt. 52 at 25.)

24  X One's attempt to re-litigate *Alice* Step One (Opp. at 22-23) ignores that Section 101 has

25  remained in this case because the Court was (correctly) concerned that the alleged Step Two

26  inventive concept was not required by the claims.  (*See* Dkt. 75 at 6:15-12:4, 20:6-29:24,

27  66:23-25.)  X One's effort to frame *Uniloc USA, Inc. v. ADP, LLC*, 772 F. App'x 890 (Fed. Cir.

28

1   2019), as a shift in *Alice* jurisprudence fails.  (Opp. at 22.)  In *Uniloc*, the Federal Circuit reversed

2   the district court's dismissal of two patents and found that those patents were not directed to

3   abstract ideas.  772 F. App'x at 898-899.  The court found that the patent claims were directed to:

4   (1) "a particular improvement in how [centralized distribution of software was] done—i.e. by use

5   of a *file packet* to enable the further functionality of initiating on-demand registration of the

6   application" and (2) "to a particular way of . . . allow[ing] on demand installation of an

7   application incorporating preferences from two different sources" by obtaining preferences from

8   both a user and administrator for executing an application program.  *Id.* at 898-899.  Unlike the

9   situation here, the claims explained the "how" of the improvement and hence were patentable.

10          Since the Court's motion to dismiss order, the Federal Circuit has held claims similar to

11  those here to be directed to abstract ideas.  In *Bridge & Post, Inc. v. Verizon Commc'ns, Inc.*,

12  778 F. App'x 882 (Fed. Cir. 2019), the court held that claims directed to tracking a user's

13  computer network activity to deliver targeted media was directed to an abstract idea where the

14  claims failed to recite "a specific improvement in computer capabilities" or "improvement in the

15  network technology underlying [the] claims."  *Id.* at 889.  As here, the claims included functional

16  limitations like "transmitting the tagged request to the server computer" and "receiving a request

17  to decode," but did not recite how those limitations should be achieved.  *Id.* at 888-889.

18  **VI.     CONCLUSION**

19          X One's opposition does not identify a factual dispute regarding infringement.  It does not

20  even purport to do so.  Instead, X One introduces new arguments that boil down to essentially the

21  same infringement theory (for the '647 patent) or that fail to satisfy the language of the claims

22  (for the '593 patent).  X One also does not dispute that it made the IPR statements to which Uber

23  cites, but argues only as to the applicability of those statements.  For Section 101, X One admits

24  that it does not claim the alleged inventive concepts and fails to identify the claim language

25  supposedly reciting how the alleged inventive concepts are performed.  Summary judgment must

26  be granted for Uber on both non-infringement and Section 101 invalidity.

27

28

1    Dated:  November 26, 2019                    MORRISON & FOERSTER LLP

2                                                 By:    /s/ Michael A. Jacobs

3                                                        MICHAEL A. JACOBS

4                                                 Attorneys for Defendant
                                                  UBER TECHNOLOGIES, INC.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28